IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID ROBIN WHITMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )        Case No.  CIV-11-202-M |
| | ) |
| MINDY MASK, et al., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this action pursuant to 42 U.S.C. §

1983, alleging a violation of his constitutional rights.  Chief United States District Judge

Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial

proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Currently before the Court is the

motion for summary judgment by Defendants Mindy Mask, David Clark, and David Miller

and the motion to dismiss/motion for summary judgment by Defendant Debbie Morton.

Plaintiff has responded, and thus the motions are at issue.  For the following reasons, the

undersigned recommends that the motion for summary judgment by Defendant Mask be

granted in part and denied in part and that the motions of Defendants Clark, Miller and

Morton[1] be granted in their entirety.

## I.  INTRODUCTION

Plaintiff names as defendants Mindy Mask, the inmate trust fund supervisor at Lawton

---

[1]Because the undersigned has considered the evidentiary materials submitted by the parties,
Defendant Morton's motion will be treated as a motion for summary judgment.

Correctional Facility; David Clark, the grievance coordinator at Lawton Correctional Facility; David Miller, the former warden at Lawton Correctional Facility; and Debbie Morton, the director's designee of the Oklahoma Department of Corrections (ODOC). Complaint, 1-2a.[2]   Plaintiff asserts four counts in his complaint.  He has organized each count according to Defendant, and thus some counts contain several claims.

Count One involves Defendant Mask, wherein Plaintiff asserts that Defendant Mask violated his First Amendment right of access to the courts and that she retaliated against him for filing a grievance against her.[3]  Complaint, 3-3a.  Count Two involves Defendant Clark,[4] against whom Plaintiff alleges a violation of his First Amendment right of access to the courts.  Complaint, 3.  Count Three concerns Defendant Miller, and in it, Plaintiff raises two retaliation claims and a denial of due process claim.  Complaint, 4-4a.  Finally, in Count Four, Plaintiff claims that Defendant Morton violated his right to due process and denied him access to the courts.  Complaint, 4a.

---

[2]Plaintiff has inserted pages between pages two and three, three and four, and four and five. These pages do not contain page numbers, and thus, the undersigned refers to them as pages "2a," "3a," and "4a" respectively.

[3]Plaintiff also asserts an "equal protection of the law" claim against Defendant Mask. However, Plaintiff has failed to present any facts or arguments to support that claim.  Thus, Defendant Mask is entitled to summary judgment on that claim.

[4]Plaintiff does not specify which Defendant was responsible for the allegations in Counts Two, Three and Four, but the facts contained in the "nature of the case" section of the complaint make it clear to which Defendant Plaintiff refers.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma ex. rel. Department of Mental Health, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the moving party initially bears the burden only of " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Celotex, 477 U.S. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, Federal Rule of Civil Procedure 56 "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

3

showing that there is a genuine issue for trial." <u>Celotex</u>, 477 U.S. at 324 (internal quotation marks omitted).

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

All Defendants seek dismissal of the complaint based on Plaintiff's alleged failure to exhaust his administrative remedies. Motion for Summary Judgment by Defendants Mask, Clark, and Miller, 4-6 [Doc. No. 37]; Motion to Dismiss/Motion for Summary Judgment by Defendant Morton, 10-13 [Doc. No. 44]. Plaintiff contends that he has exhausted all available administrative remedies and/or that Defendants prevented him from exhausting his administrative remedies. Plaintiff's Response to Motion for Summary Judgment by Defendants Mask, Clark, and Miller, 4-26 [Doc. No. 56]; Plaintiff's Response to Defendant Morton's Motion to Dismiss/Motion for Summary Judgment, 19-21 [Doc. No. 75].

Failure to exhaust administrative remedies is an affirmative defense, and thus Defendants bear the burden of raising and establishing this defense. <u>Tuckel v. Grover</u>, 660 F.3d 1249, 1254 (10th Cir. 2011) (citing <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007)). A Plaintiff is required to exhaust only those remedies that are available. <u>See</u> <u>Tuckel</u>, 660 F.3d at 1252. For example, when prison officials thwart a prisoner's ability to exhaust his administrative remedies, they are foreclosed from relying on nonexhaustion to dispose of a subsequent lawsuit. <u>See</u> <u>Tuckel</u>, 660 F.3d at 1252.

Evaluating Defendants' motion for summary judgment on grounds that Plaintiff failed to exhaust his administrative remedies is no easy task because Plaintiff makes prolific use

of the prison grievance system and the parties have attached a number of administrative

filings that do not pertain to the issues presented in this case to the Special Report, to the

Defendants' respective motions, and to the Plaintiff's various filings.  Additionally, Lawton

Correctional Facility and ODOC use different numbering systems to track administrative

filings, making it even more difficult to match requests to staff and grievances with the

appropriate grievance appeals.

Plaintiff filed various requests to staff, grievances, and grievance appeals related to

the issues raised in his complaint, but many of these were dismissed for Plaintiff's alleged

failure to properly follow the applicable procedures.  For example, on November 15, 2010,

Plaintiff submitted a grievance regarding Defendant Mask's failure to timely return an in

forma pauperis affidavit in which he asked that Defendant Mask be provided assistance and

that Defendant Mask provide him with a statement that he filed his appeal late through no

fault of his own.  This grievance was returned unanswered because it contained more than

one issue.  Special Report, Ex. 3.  Additionally, on March 13, 2011, Plaintiff filed a

grievance alleging that Defendant Mask retaliated against him for filing a grievance against

her, and he requested that Defendant Mask be told that she must respond to his requests to

staff within ten days and if she fails to do so, Plaintiff may file a grievance after thirty days.

Plaintiff's Response to Motion to Summary Judgment, Ex. K at 2 [Doc. No. 56].  This

grievance was also returned unanswered because it included more than one issue, among

other deficiencies.  Plaintiff's Response to Motion for Summary Judgment, Ex. K at 4 [Doc.

No. 56].

Other grievances were rejected for Plaintiff's alleged failure to comply with procedures governing prisoners on grievance restriction. For instance, on March 13, 2011, Plaintiff filed a grievance to which he attached an affidavit required by the procedures governing prisoners on grievance restriction. Plaintiff's Response to Motion for Summary Judgment, Ex. K at 2-3 [Doc. No. 56]. This grievance was returned unanswered because the affidavit was deemed incorrect under the grievance procedures, but the document returning it did not contain any further explanation. Plaintiff's Response to Motion for Summary Judgment, Ex. K at 4 [Doc. No. 56]. On April 7, 2011, another grievance was returned unanswered for the same reason, again without explanation. Plaintiff's Response to Motion for Summary Judgment, Ex. L [Doc. No. 56]. On at least one occasion, Plaintiff asked for specific clarification regarding what he needed to do to comply with the procedures governing prisoners on grievance restriction, but was only told he must follow OP-090124. Plaintiff's Response to Motion for Summary Judgment, Ex. W [Doc. No. 56]. It is not clear how Plaintiff failed to comply with the procedures governing prisoners on grievance restriction, only that when he asked for clarification of those procedures, Defendants failed to provide it.

Finally, the Special Report contains ODOC grievance procedures which took effect on May 24, 2011, approximately five months after the events complained of occurred. Special Report, Ex. 15. Plaintiff contends that this version of the grievance procedure differs in significant respects from the procedures in effect at the relevant time. In particular, he claims that under the old procedures the administrative review authority was not specifically

6

allowed to reject inmate grievances for procedural defects.  Plaintiff's Response to Motion for Summary Judgment, 4 [Doc. No. 56].  Plaintiff also contends that the old procedures allowed an offender to correct and resubmit procedurally defective grievances within thirty days.  Plaintiff's Response to Motion for Summary Judgment, 5 [Doc. No. 56].  Defendants have not addressed Plaintiff's contention that they have relied on a grievance procedure that differs from the one in effect during the relevant time period.  This together with Defendants' unexplained rejection of Plaintiff's exhaustion attempts leads the undersigned to find that Defendants have failed to show an absence of material fact as to the affirmative defense of failure to exhaust administrative remedies.  Accordingly, it is recommended that summary judgment on this basis be denied as to all Defendants.

## B.  Plaintiff's Claims Against Defendant Mask

Plaintiff asserts a denial of access to the courts and a retaliation claim against Defendant Mask.  Each claim will be discussed in turn.

### 1.  Denial of Access to the Courts

Plaintiff claims that Defendant Mask denied him access to the courts in that an appeal to the Oklahoma Court of Criminal Appeals regarding his earned credits was dismissed as untimely due to her failure to timely notarize and return his in forma pauperis affidavit.  Complaint, 3-3a.

The Supreme Court has recognized a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 828 (1977).  However, prisoners are entitled only to meaningful–not total or unlimited–access to the courts.  Bounds, 430 U.S. at 823.  An

inmate's claim that he has been denied access to the courts must show actual injury as a "constitutional prerequisite." Lewis v. Casey, 518 U.S. 343, 351 (1996). Thus, the right of access to the courts prohibits prison officials from actually hindering a prisoner's efforts to bring a non-frivolous legal claim. Green v. Johnson, 977 F.2d 1383, 1389-90 (10th Cir.1992). Without a showing of actual injury there is no constitutional violation. Lewis 518 U.S. at 351.

The following facts are undisputed. On September 2, 2010,[5] Plaintiff submitted an in forma pauperis affidavit to Defendant Mask and asked that she return it to him prior to September 15, 2010, so that he might submit an appeal to the Oklahoma Court of Criminal Appeals which was due that date. Special Report, 6, Ex. 5.[6] Defendant Mask returned Plaintiff's in forma pauperis affidavit on September 15, 2010, and the Oklahoma Court of Criminal Appeals dismissed his appeal as untimely. Special Report, Ex. 5. However, upon his request the Oklahoma Court of Criminal Appeals granted Plaintiff leave to seek an appeal out of time. Special Report, Exs. 6-7. On appeal, the Oklahoma Court of Criminal Appeals affirmed the state district court's denial of Plaintiff's petition for judicial review on August 26, 2011. Case No. REC-2011-487, Oklahoma Court of Criminal Appeals, Docket.

Defendant Mask argues that Plaintiff was at fault for failing to obtain his in forma

---

[5]Plaintiff claims he submitted the affidavit approximately ten business days prior to when his appeal was due while Defendant Mask alleges that it was submitted the day before the appeal was due. The state district court found that Plaintiff submitted the affidavit on September 2, 2010. Special Report, Ex. 6.

[6]The Special Report has been treated as an affidavit. See Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991) (explaining role of a special report in summary judgment proceedings).

pauperis affidavit from her in order to timely appeal.  Motion for Summary Judgment by Defendants Mask, Clark, and Miller, 8 [Doc. No. 37].  This argument is rejected in light of the state district court's finding that Plaintiff filed his appeal out of time through no fault of his own.  Special Report, Ex. 6.

Nevertheless, the undersigned agrees that Plaintiff has failed to show that Defendant Mask's failure to timely return his in forma pauperis affidavit resulted in actual injury. Plaintiff was allowed to seek an appeal out of time, and the Oklahoma Court of Criminal Appeals considered the merits of Plaintiff's appeal.  Although Plaintiff's petition for judicial review was denied, he was not prevented from bringing his legal claim.  Accordingly, the undersigned finds that Defendant Mask is entitled to summary judgment on Plaintiff's denial of access to the court's claim.

### 2.  Retaliation

Plaintiff also contends that Defendant Mask filed an offense report against him and instructed the prison's law library to deny him copies of administrative documents in retaliation after he filed a grievance against her regarding her failure to timely return his in forma pauperis affidavit.  Complaint, 3-3a.

Prison officials may not retaliate against or harass an inmate in retaliation for the inmate's exercise of his constitutional rights.  Smith v. Maschner, 899 F.2d 940, 947 (10th Cir.1990).  "This principle applies even where the action taken in retaliation would be otherwise permissible."  Smith, 899 F.2d at 948.  Nevertheless, in reviewing a prisoner's claim of retaliation, the Court must be mindful that "it is not the role of the federal judiciary

to scrutinize and interfere with the daily operations of a state prison." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (citing Turner v. Safley, 482 U.S. 78 (1987)). "Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity." Peterson, 149 F.3d at 1144. Thus, to prevail on a retaliation claim, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. Peterson, 149 F.3d at 1144. To survive a summary judgment motion, a plaintiff must present some evidence of a defendant's retaliatory motive. Brown v. Sales, No. 96-6068, 1997 WL 375347 at *1 (10th Cir. Jul. 8, 1997); see also Wright v. McCotter, No. 98-4095, 1999 WL 76904 at *1 (10th Cir. Feb. 18, 1999) ("to withstand dismissal [under 28 U.S.C. § 1915(e)(2)(B)], Plaintiff must plead some facts showing retaliatory motive"). In some cases, circumstantial evidence may provide sufficient evidence of such a motive. For example, in Maschner, 899 F.2d at 948-49, circumstantial evidence, including "suspicious timing of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern by defendants of blocking his access to legal materials and assistance" was sufficient to preclude summary judgment for defendants.

The following facts are uncontroverted. After the Oklahoma Court of Criminal Appeals dismissed Plaintiff's appeal as untimely, Plaintiff sent a request to staff to Defendant Mask, criticizing her for not timely returning his in forma pauperis affidavit even though he submitted the affidavit to her some thirteen days before his appeal was due. Special Report, Ex. 2; Plaintiff's Response, 6 [Doc. No. 56]. Defendant Mask responded that Plaintiff sent

her the affidavit the day before it was due and expected her to "jump through hoops." Special Report, Ex. 2.  On November 15, 2010, Plaintiff submitted a request to staff to Defendant Mask accusing her of lying in her response.  Plaintiff's Response to Motion for Summary Judgment, Ex. F [Doc. No. 56].  Defendant Mask did not respond, and on December 21, 2010, Plaintiff filed a grievance asking that Defendant Mask be instructed to respond to his request to staff.  Special Report, Ex. 10, at 17.  Defendant Mask responded to the request to staff on December 22, 2010, stating that "[a]ll affidavits are completed in the facility guidelines," and the related grievance was returned unanswered that same day, stating that the request to staff had been answered.  Special Report, Ex. 10, at 13, 18.

On December 28, 2010, Defendant Mask filed an offense report against Plaintiff, alleging that Plaintiff was insolent to staff when he accused her of lying in his November 15, 2010, request to staff.  Special Report, Ex. 10, at 6.  Defendant Mask listed the date of the offense as December 22, 2010, the date she responded to the request to staff.  Special Report, Ex. 10, at 6.  A disciplinary hearing was set for January 11, 2011, but on January 14, 2011, the hearing was postponed until January 21, 2011.  Special Report, Ex. 10, at 6-7.  Plaintiff was found guilty of insolence to staff at the disciplinary hearing, and the facility head affirmed the decision on review.  Special Report, Ex. 10, at 5.  However, on due process review, Plaintiff's disciplinary conviction was overturned, the offense report dismissed, and the fine refunded because the disciplinary process was not completed in a timely manner. Special Report, Ex. 10, at 2.  Specifically, the reviewer stated that while the offense occurred on December 22, 2010, the offense report was not filed until December 28, 2010, and the

original hearing was not postponed until two days after the original hearing was supposed to take place.  Special Report, Ex. 10, at 2.

Although the finding of the state district court supports Plaintiff's claim that Defendant Mask denied him access to documents needed to file a timely appeal, Plaintiff has provided no evidence showing that Defendant Mask instructed staff members to deny him copies of administrative documents; indeed, as Defendant Mask correctly notes, Plaintiff's numerous administrative filings belie any such claim.  However, the dates surrounding Defendant Mask's filing of the misconduct report are suspicious.  Plaintiff called Defendant Mask a liar in a request to staff dated November 15, 2010, and he filed his grievance requesting that Defendant Mask answer his request to staff on December 21, 2010. Defendant Mask responded to the request to staff on December 22, 2010, but waited until December 28, 2010, to file a misconduct report against Plaintiff for insolence to staff. Further, she listed the date of the offense as December 22, 2010, the date she finally answered the request to staff and the day after the grievance was filed, rather than November 15, the date upon which the Plaintiff's insolent behavior allegedly occurred.  While "temporal proximity between [the] protected activity and [the] challenged prison action does not, in itself, demonstrate the causal nexus for a retaliation claim," Strope v. Cummings, No. 09-3306, 381 Fed. Appx. 878, 883 (10th Cir. June 9, 2010), the time frames are certainly material.  If Defendant Mask truly found the Plaintiff's remarks to be insolent, it would be expected that the misconduct report would have been filed when she first received his November 15, 2010, request to staff, not after Plaintiff filed his grievance complaining about

12

her failure to respond.  Thus, the undersigned finds that Plaintiff has shown a genuine issue of material fact as to his retaliation claim against Defendant Mask.

The eventual dismissal of the misconduct report does not absolve Defendant Mask of liability.  To be actionable, the retaliatory action must be such that it "would chill a person of ordinary firmness from continuing to engage in that activity."  Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001) (quoting Worrell v. Henry, 219 F.3d 1197, 1213 (10th Cir. 2000)), abrogated on other grounds by Hartman v. Moore, 547 U.S. 250 (2006).  Thus, the retaliatory action need not have actually deterred the prisoner so long as it can be shown that it would "chill a person of ordinary firmness."  Poole, 271 F.3d at 960.  This inquiry is not static and must be adapted to the prison setting such that "[p]risoners may be required to tolerate more than [other citizens] . . . before a [retaliatory] action taken against them is considered adverse."  Poole, 271 F.3d at 961 (quoting Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001) (fourth alteration in original)).  The Tenth Circuit has since applied the above to a prison setting which involved a baseless disciplinary charge that was later dismissed at the administrative level.  The Court found that the later dismissal did not diminish the chilling effect of the disciplinary charge.  Zarska v. Higgins, No. 05-3204, 171 Fed. Appx. 255, 259-60 (10th Cir. Mar. 20, 2006).  Accordingly, it is recommended that Defendant Mask's motion for summary judgment on Plaintiff's claim that she filed a misconduct report against him in retaliation be denied.

## C. Defendant Clark

Plaintiff claims that Defendant Clark denied him access to the courts by failing to

respond to his grievances, returning his grievances unanswered for technical violations and without explaining how to correct those grievances, and dismissing corrected grievances out of time.  Complaint, 3.  Plaintiff contends that these actions prevented him from exhausting his administrative remedies–thus preventing him from seeking judicial review of his claims. Complaint, 3a.  Plaintiff also claims that Defendant Clark committed perjury in three affidavits and was at fault for Plaintiff's placement on grievance restriction.  Complaint, 3-3a.

Plaintiff's claims have their root in a request to staff Plaintiff sent to Defendant Clark, asking for clarification regarding why he denied a grievance concerning Defendant Mask's failure to timely return Plaintiff's in forma pauperis affidavit.  Defendant Clark purportedly returned that request to staff  unanswered because it contained multiple issues.  Plaintiff's Response to Motion for Summary Judgment, Ex. Q [Doc. No. 56].  Plaintiff contested this conclusion in two separate requests to staff, which Defendant Clark returned unanswered because Plaintiff submitted copies of the requests to staff instead of the originals.  Plaintiff's Response to Motion for Summary Judgment, Ex. R at 1-2 [Doc. No. 56].  Plaintiff then sent two grievances to Defendant Miller requesting that Defendant Clark answer his requests to staff, and Defendant Miller returned those grievances unanswered because Plaintiff was on grievance restriction and had failed to include the proper documentation.  Plaintiff's Response to Motion for Summary Judgment, Ex. S [Doc. No. 56].  Plaintiff next sent a request to staff to Defendant Clark, stating that the grievance restriction procedures did not apply to this issue because the original requests to staff were submitted before Plaintiff was

placed on grievance restriction.  Plaintiff's Response to Motion for Summary Judgment, Ex. T [Doc. No. 56].   Defendant Clark responded that Plaintiff was placed on grievance restriction for failing to follow the ODOC grievance process.  Id.  Thereafter, Plaintiff sent another grievance to Defendant Miller again requesting that Defendant Clark respond to the requests to staff, attaching an affidavit which he alleges complied with the ODOC grievance restriction policies.  Plaintiff's Response to Motion for Summary Judgment, Ex. V, at 1-2 [Doc. No. 56].  Defendant Miller also returned that grievance unanswered because Plaintiff was on grievance restriction and had not included the proper documentation, and because Plaintiff was now out of time due to his failure to follow previous instructions for filing his grievance.  Plaintiff's Response to Motion for Summary Judgment, Ex. V, at 4 [Doc. No. 56].

Although Defendant Clark, as grievance coordinator at Lawton Correctional Facility, is an integral part of the grievance process, Plaintiff has failed to show that Defendant Clark denied him access to the courts by failing to respond to his grievances.  It is clear from the administrative filings that Defendant Miller, not Defendant Clark, returned the bulk of the grievances at issue here.  Further, even assuming that Plaintiff was denied access to the courts as a result of his difficulties with the grievance process, he has failed to show any actual injury.  Plaintiff does not allege or argue any actual injury nor does he state what claims he was barred from bringing due to Defendant Clark's failure to answer his administrative filings.

Finally, Plaintiff alleges that Defendant Clark perjured himself in three prior cases and that Defendant Clark was at fault for Plaintiff's placement on grievance restriction.

15

Plaintiff's Response to Motion for Summary Judgment, 19-23 [Doc. No. 56]. A perjury claim, by itself, is insufficient to assert a claim under § 1983. See Segreti v. Borough of Wilkinsburg, No.09-1511, 2011 WL 284130, at *6 (W.D. Pa. Jan. 26, 2011) (plaintiff's allegation that defendants lied and committed perjury in two state court proceedings and that other defendants took no action to address the so-called perjury fails to establish violation of a right under the Constitution or federal statutory law; perjury and false swearing are criminal offenses under state law); Cobb v. Hawsey, Civil Action No. 07-0353-WS-B, 2007 WL 3086023, at *3, n. 5 (S.D.Ala. Oct. 19, 2007) (at most amended complaint alleges violations of state statutes concerning perjury, but § 1983 claim cannot be predicated on a violation of a state statute) (citing Trujillo v. Williams, 465 F.3d 1210, 1214 n. 2 (10th Cir.2006) (to extent plaintiff "seeks relief for alleged violations of state statutes ... he has stated no cognizable claim under § 1983, which establishes a cause of action only for deprivation of rights secured by the Constitution or federal law")). Accordingly, Plaintiff must show that the alleged perjury violated a constitutional right. See Buchanan v. Oklahoma, No. 10-6099, 398 Fed. Appx. 339, 341 (10th Cir. Oct. 12, 2010) ("To state a claim for relief under 42 U.S.C. § 1983, 'a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . .'" (quoting West v. Atkins, 487 U.S. 42, 48 (1988))). Even assuming Plaintiff has sufficiently stated a § 1983 claim, nothing shows that Defendant Clark's alleged perjury denied him access to the courts because he has failed to show any actual injury to support such a claim. The same is true for Plaintiff's claim that Defendant Clark was instrumental in Plaintiff's placement on grievance

restriction–he has failed to come forward with evidence of actual injury.  Accordingly, the undersigned finds that Defendant Clark is entitled to summary judgment on Plaintiff's claims against him.

### D.  Defendant Miller

Plaintiff raises two retaliation claims and a denial of due process claim against Defendant Miller.  Each claim will be addressed separately.

### 1.  Retaliation

Plaintiff claims that Defendant Miller's decision to place him in the segregated housing unit after a search of Plaintiff's cell uncovered drugs and a cell phone was in retaliation for his efforts to seek judicial review.  Complaint, 4.  Plaintiff alleges that he was placed in the segregated housing unit despite his cellmate admitting that the contraband belonged to him.  Complaint, 4.  Plaintiff contends that his cellmate was released from the special housing unit shortly after pleading guilty, but that Plaintiff went to a hearing where he was found guilty despite not being allowed to present evidence of his innocence. Complaint, 4.  Plaintiff also claims that Defendant Miller retaliated against him by seeking to transfer him to a maximum security facility shortly after his contraband conviction. Complaint, 4.  Plaintiff alleges that an officer in the special housing unit told him that the only reason Plaintiff was in the special housing unit with a recommendation that he be sent to a maximum security facility was because he filed lawsuits.  Complaint, 4-4a.

Regarding Plaintiff's placement in the segregated housing unit, the uncontroverted facts show that on November 18, 2010, an offense report was filed after a search of

Plaintiff's cell uncovered two small bags which tested positive for methamphetamine. Special Report, Ex. 17 at 6.  In a witness statement dated November 23, 2010, presumably presented in Plaintiff's cellmate's disciplinary hearing, Plaintiff stated that the methamphetamine did not belong to his cellmate and that he would take responsibility for it.  Special Report, Ex. 17 at 8.  A disciplinary hearing was held on November 30, 2010, where Plaintiff was found guilty and punished with thirty days disciplinary segregation, loss of 365 earned credits, and demotion to level one for ninety days.  Special Report, Ex. 17 at 5.  The facility head affirmed Plaintiff's conviction, and on due process review it was found that sufficient evidence supported Plaintiff's conviction and he was provided due process. Special Report, Ex. 17 at 1-2, 5.

It is standard practice at Lawton Correctional Facility to place inmates in the segregation housing unit for prehearing detention after they have been charged with a misconduct offense, Special Report, 8-9, Ex. 19 at 1, Ex. 20 at 6, and so the discovery of methamphetamine after the search of Plaintiff's cell gave sufficient reason for Plaintiff's placement.  Plaintiff now claims that the methamphetamine belonged to his cellmate, despite the fact that he signed a witness statement in which he admitted that the methamphetamine belonged to him.  However, Plaintiff has not come forth with any facts showing a triable issue on his retaliation claim regarding his confinement in the segregation housing unit.

Additionally, the following facts are undisputed regarding Plaintiff's claim of retaliatory transfer.  On December 27, 2010, Defendant Miller recommended that Plaintiff be transferred to a maximum security facility because he posed a security risk to the staff at

Lawton Correctional Facility.  Special Report, Ex. 18, at 1, 6-7.  In support of this recommendation, a custody assessment scale was prepared which showed that Plaintiff had a comprehensive custody score of thirteen points, placing him in the recommended custody level of maximum security.  Special Report, Ex. 18, at 1, 5-6.[7]  Defendant Miller also referenced Plaintiff's disciplinary conviction for possession of methamphetamine and his twelve misconduct reports received since June 24, 2008.  Special Report, Ex. 18, 1, 5-6.  Both the reviewing authority and the division office concurred with the recommended transfer.  Special Report, Ex. 18, at 7.  However, the population office did not concur, finding that Plaintiff could be managed at a medium security facility.  Special Report, Ex. 18, at 2, 7.  Accordingly, Plaintiff was not transferred to a maximum security facility, and he is currently incarcerated at a medium security facility.

The undisputed facts show that Plaintiff's recommended transfer to a maximum security facility was justified by the custody assessment scale.  In addition to his custody scale rating, Plaintiff had received a number of misconduct convictions: twelve misconduct convictions at Lawton Correctional Facility, and 83 misconducts during his incarceration, five of which were considered violent toward staff members and nine of which were otherwise considered violent.  Special Report, Ex. 18, at 1.  Thus, Plaintiff has failed to come forward with any facts showing a triable issue on his retaliatory transfer claim.  Accordingly,

---

[7]Defendant Miller actually stated in his memorandum recommending transfer that Plaintiff's thirteen security points placed him in a recommended medium custody level, but the custody assessment scale form shows the thirteen security points placed Plaintiff in a recommended maximum custody level.  Compare Special Report, Ex. 18, at 1 with Special Report, Ex. 18, at 6.

the undersigned recommends that summary judgment be granted as to Defendant Miller on Plaintiff's retaliation claims.

### 2. Due Process

Plaintiff also claims that Defendant Miller denied him his due process rights by "rubber stamping" his appeals, misapplying a rule in denying grievance appeals regarding earned credits, and in failing to provide him monthly timesheets regarding his earned credits. Complaint, 4a.  Plaintiff further alleges that Defendant Miller deprived him of his due process rights when Defendant Miller failed to provide a monthly accounting of Plaintiff's current release date as required under state law and ODOC policies.  Plaintiff's Response to Motion for Summary Judgment, 26 [Doc. No. 56].  Plaintiff claims that Defendant Miller's action implicated a protected liberty interest because without such an accounting, Plaintiff could not determine whether he was receiving the correct amount of earned credits. Plaintiff's Response to Motion for Summary Judgment, 26 [Doc. No. 56].

Plaintiff has failed to produce any evidence or otherwise show that he is not receiving the correct number of earned credits.  Thus, Plaintiff's claim that he is being deprived of a protected liberty interest as a result of Defendant Miller's alleged failure to provide certain reports is mere speculation and insufficient to survive summary judgment.  Plaintiff's claims that Defendant Miller "rubber stamped" his grievance appeals and misapplied rules in denying his grievances also fails.  In the prison context, state regulations can create protected liberty interests, but such interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection

20

by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citations omitted).  It has long been the rule in this Circuit that there is no independent constitutional right to state administrative grievance procedures, and the state's voluntary provision of an administrative grievance process creates no such liberty interest in that process.  <u>Boyd v. Werholtz</u>, No. 10–3284, 443 Fed.Appx. 331, 332 (10th Cir. Oct. 3, 2011).  The same is true of prison recordkeeping provisions: "Both incidents appear to have resulted from careless, even negligent, recordkeeping.... [s]uch incidents of negligence, while unfortunate, cannot be the basis of a constitutional claim ... of a deprivation of due process under the Fourteenth Amendment. <u>Hood v. Prisoner Health Services, Inc.</u>, No. 05-3198, 180 Fed.Appx. 21, 26 (10th Cir. May 9, 2006) (citing <u>Harris v. Maynard</u>, 843 F.2d 414, 415 (10th Cir.1988) ("[U]nder the due process clause of the Fourteenth Amendment no constitutional deprivation occurs as a result of the negligent acts of prison officials....").  Accordingly, the undersigned finds that Defendant Miller is entitled to summary judgment on Plaintiff's due process claims.

### E.  Defendant Morton

Plaintiff claims that Defendant Morton both violated his due process rights and denied him access to the courts.  In support, Plaintiff claims that Defendant Morton has been "rubber stamping" his due process appeals, exceeded and abused her authority in responding to his grievances, has placed him on grievance restriction, and has failed to allow him to correct purported errors in his grievances.  Complaint, 4a.  Plaintiff also claims that there were times

where the violation was clear on the face of the report, requiring Defendant Morton to lie to deny the appeal. Complaint, 4a. He further claims that Defendant Morton is working with facility heads "to see how many ways they can deny a person's rights." Complaint, 4a. Plaintiff claims that these allegations amount to a denial of his due process rights and have prevented him from exhausting his administrative remedies, thus amounting to a denial of his right of access to the courts. Complaint, 4a.

Plaintiff's claims against Defendant Morton fail. It is well established that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). Further, Plaintiff has failed to show that Defendant Morton interfered with his right of access to the courts or that he was actually injured by any such interference. Accordingly, the undersigned finds that Defendant Morton is entitled to summary judgment.

## IV. PENDING MOTIONS

Plaintiff has a number of motions pending in this case. Throughout most of these motions, and especially in [Doc. Nos. 79, 82], Plaintiff asserts a number of claims against James Crabtree Correctional Center staff members, such as interference with his legal mail. In a previous order [Doc. No. 71], the undersigned denied Plaintiff's request for a temporary retraining order/preliminary injunction against James Crabtree Correctional Center staff members Felicia Harris, Becky Guffy, and Kenya Sackett and Plaintiff's motion to add as defendants Ms. Harris, Ms. Guffy, Ms. Sackett, and Ron Anderson. Those motions raised

the same issues that are asserted throughout Plaintiff's pending motions.  Thus, to the extent Plaintiff is seeking to allege substantive claims against the above individuals or is requesting the Court to enter a temporary restraining order/preliminary injunction against these individuals, the undersigned finds that those claims are foreclosed by the above-mentioned order and the motions are denied.

In [Doc. No. 87], Plaintiff asks the Court to take judicial notice of the Court's opinion in Whitmore v. Miller, No. CIV-2010-1409-R (W.D. Okla).  To the extent Plaintiff is asking the Court to consider that opinion in ruling on Plaintiff's claims at issue in this case, the undersigned has considered that opinion and finds that it does not change the recommended outcome herein.  Additionally, Plaintiff seeks the undersigned's disqualification based on "personal knowledge" of the facts of this case which the undersigned learned by acting as the assigned magistrate judge in this lawsuit.  A magistrate judge is required to disqualify himself if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings."  28 U.S.C. § 455(b)(1).  However, "[k]nowledge gained from the judge's discharge of his judicial function is not a ground for disqualification under 28 U.S.C. § 455(b)(1)."  Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 447-48 (2d Cir. 2005).  Further, to the extent Plaintiff is arguing that the undersigned is prejudiced against him, recusal is not mandated because Plaintiff has failed to present any evidence which would cause a reasonable person to doubt the undersigned's impartiality.  Willner v. University of Kansas, 848 F.2d 1023, 1027 (10th Cir. 1988).  See also Bixler v. Foster, 596 F.3d 751, 762 (10th Cir. 2010) ("Adverse rulings alone do not

23

demonstrate judicial bias."). Accordingly, Plaintiff's motion for judicial notice [Doc. No. 87] is denied.

Defendant Morton and Defendants Mask, Clark, and Miller have filed motions for protective orders [Doc. Nos. 91-92] regarding discovery requests Plaintiff claims he sent to them. Defendants argue that their protective orders are proper pursuant to Federal Rule of Civil Procedure 26(c) because of their pending dispositive motions. The undersigned agrees and thus Defendants respective motions for protective orders are granted; Plaintiff's motion to compel discovery [Doc. No. 83] is denied; Plaintiff's motion to order correspondence [Doc. No. 84] is denied; and Plaintiff's motion for an extension of time to respond to the motion for a protective order by Defendants Mask, Miller, and Clark [Doc. No. 100] is denied as Plaintiff has responded to that motion. However, since Plaintiff's retaliation claim will remain against Defendant Mask if this Report and Recommendation is adopted, the undersigned does not see any reason why Plaintiff should now be denied the ability to conduct discovery on this claim against Defendant Mask going forward.

Plaintiff also requests the Court to order the Clerk of this Court to provide him file stamped copies of his motions [Doc. No. 96]. This motion is denied. If Plaintiff needs file stamped copies of his motions, he should contact the Clerk of this Court for guidance on how to obtain such documents. Finally, Plaintiff's motion for appointment of counsel [Doc. No. 106] is denied without prejudice to Plaintiff re-urging the motion if this Report and Recommendation is adopted and if any claims remain for trial.

### RECOMMENDATION

For the reasons set forth above, it is recommended that the Motion for Summary Judgment by Defendants Clark, Mask, and Miller [Doc. No. 37] be **GRANTED IN PART AND DENIED IN PART** in that summary judgment be entered on behalf of Defendants Clark and Miller on all counts and on behalf of Defendant Mask on Plaintiff's denial of access to the courts claim, but that Defendant Mask's motion for summary judgment on Plaintiff's retaliation claim be denied; and that Defendant Morton's Motion to Dismiss/Motion for Summary Judgment, treated as a motion for summary judgment [Doc. No. 44] be **GRANTED**.  In addition, Defendant Morton's Motion for Protective Order [Doc. No. 91] and the Motion for Protective Order by Defendants Mask, Miller, and Clark [Doc. No. 92] are **GRANTED**.

In light of the foregoing, the following motions are **DENIED**: Plaintiff's Motion to Stay Case [Doc. No. 79]; Plaintiff's Motion for Emergency Hearing [Doc. No. 82]; Plaintiff's Motion to Compel Discovery [Doc. No. 83]; Plaintiff's Motion for Order [Doc. No. 84]; Plaintiff's Motion for Order for Judicial Notice [Doc. No. 87]; Plaintiff's Motion for Order [Doc. No. 96]; and Plaintiff's Motion for Extension of Time [Doc. No. 100].  Lastly, Plaintiff's Motion for Appointment of Counsel [Doc. No. 106] is denied without prejudice to Plaintiff re-urging his motion if this Report and Recommendation is adopted and if any of his claims remain for trial.

The parties are hereby advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by March 15, 2012, in accordance with 28

U.S.C § 636 and Federal Rule of Civil Procedure 72.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter unless the matter is re-referred.

ENTERED this 24th day of February, 2012.


DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE